```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
MARGIE SEARLES,

                    Plaintiff,                    09-CV-6117

              v.                                  **DECISION**
                                                  **and ORDER**
MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY

                    Defendant.
_____
```

## Introduction

Plaintiff Margie Searles-Campell ("Plaintiff") brings this action pursuant to Title II and Title XVI of the Social Security Act ("the Act"), claiming that the Commissioner of Social Security ("Commissioner") improperly denied her application for disability insurance benefits ("DIB") and supplement security income benefits ("SSI") Specifically, Plaintiff alleges that the decision of Administrative Law Judge Barry Ryan ("ALJ") was erroneous and not supported by substantial evidence in the record.

The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12 (c) ("Rule 12(c)"), on the grounds that the ALJ's decision was supported by substantial evidence. This Court finds that the decision of the Commissioner for the reasons set forth below, is not supported by substantial evidence nor in accordance with applicable law, and should be reversed and remanded for further development of the facts.

## Background

On May 6, 2005, Plaintiff filed an application for DIB and SSI, alleging that she became disabled on January 6, 2005, due to swelling of her brain that caused memory loss and problems with equilibrium. (Tr. 59-64, 70, 325-28). Plaintiff's claim was initially denied by the Social Security Administration. (Tr. 46-50). On March 27, 2008, ALJ Barry Ryan held an administrative hearing at which Plaintiff appeared with her representative Hailey Foglietta. (Tr. 365-97). The ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act on May 1, 2008. (Tr. 365-97). The Appeals Council denied Plaintiff's request for review on February 11, 2009. (Tr. 5-8). On March 10, 2009, Plaintiff timely filed this action. (Plaintiff's Complaint).

## Discussion

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of DIB. Additionally, the section directs that when considering such claims, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the court's scope of review to determining

whether or not the Commissioner's findings are supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo). The court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D.Tex. 1983) (citation omitted). Consequently, the Commissioner moves for an order to affirm the decision pursuant to sentence four of 42 U.S.C. 405(g), which provides "[t]he court shall have the power to enter upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for rehearing." A remand to the Commissioner for further development of the evidence under 42 U.S.C. 405(g) is appropriate when "there are gaps in the administrative record or the ALJ has applied an improper legal standard." Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999). However, "where the existing Record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose, a remand for calculation of benefits is appropriate." White v. Comm. of Soc. Sec., 302 F.Supp.2d 170, 174 (W.D.N.Y. 2004).

**II. The Commissioner's decision to deny the Plaintiff benefits is not supported by substantial evidence and contains errors of law**

In his decision, the ALJ applied the Social Security Administration's five-step sequential analysis.[1] Under step one of the process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 6, 2005. (Tr. 16). At steps two and three, the ALJ concluded that Plaintiff's neurological disorder and obesity were severe within the meaning of the Social Security Regulations, but not severe enough to meet or equal singly or in combination, any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. Plaintiff's depression, sleep apnea, fibromyalgia, ankle, shoulder, knee, and back impairments were not severe. (Tr. 17-19).

At step four, the ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform unskilled, light work with non-exertional limitations. (Tr. 20, 25-6). The ALJ found that Plaintiff was incapable of performing her past relevant work as

---

[1]Five step analysis includes: (1) ALJ considers whether claimant is currently engaged in substantial gainful activity; (2) if not, ALJ considers whether claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities; (3) if claimant suffers such impairment, third inquiry is whether, based solely on medical evidence, claimant has impairment which is listed in regulations Appendix 1, and if so claimant will be considered disabled without considering vocational factors (4) if claimant does not have listed impairment, fourth inquiry is whether, despite claimant's severe impairment, he has residual functional capacity to perform his past work; and (5) if claimant is unable to perform past work, ALJ determines whether claimant could perform other work. See id.

an information services technician, assistant secretary, receptionist, and food processor. (Tr. 25). In the fifth step, the ALJ determined that Plaintiff had the RFC to perform competitive, remunerative unskilled work. (Tr. 25). I find that the ALJ failed to properly apply the correct legal standards in determining Plaintiff's RFC at steps four and five. Accordingly, this case should be remanded for further proceedings consistent with this decision.

**A. The ALJ improperly evaluated Plaintiff's mental functional capacity**

The ALJ found that Plaintiff failed to prove that her mental impairments was severe enough to establish a complete inability to work.(Tr. 19-20). To establish that a mental impairment is disabling, Plaintiff must demonstrate that she had at least two of the following in addition to her depressive symptoms: (1) marked restrictions of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. See 20 C.F.R., Pt. 404, Subpt. P, App. 1, §§ 12.02, 12.04.

The ALJ noted that Plaintiff prepared food, cleaned, drove, grocery shopped, fed her pets, washed dishes and did laundry. (Tr. 19, 77-83, 257, 387). In October 2005, Plaintiff reported that she was busy at home with a lot of canning projects and had just gotten a horse. (Tr. 183). A psychiatric consultative examiner

5

reported that Plaintiff "related well," could handle her finances, had some friends, and drove her husband to work.(Tr. 152-53). The ALJ found that Plaintiff had no episodes of decompensation. (Tr. 20). The ALJ ultimately concluded that Plaintiff did not have the marked restrictions required under the Listings. (Tr. 19-20).

In analyzing mental functional capacity ("MFC"), the ALJ must consider the same impairment-related medical and non-medical information that is used to determine whether the mental impairment meets listing severity. SSR 85-16. Here, the ALJ established that Plaintiff's depression and limitations in intellectual functioning were not severe enough to establish a complete inability to work under Listing 12.02 and 12.04. (Tr. 19-20). If the impairment is of lesser severity than the listings, the ALJ must next make an individualized assessment of the claimant's "capacity to perform and sustain mental activities which are critical to work performance." SSR 85-16. The factors that must be considered include the ability (1) to understand, remember and carry out simple instructions; (2) to make simple work-related decisions; (3) to respond appropriately to supervision, coworkers and customary work pressures in a work setting; and (4) to deal with routine changes in work settings. 20 C.F.R. § 404.1545(c); SSR 96-9p; SSR 85-16.

The ALJ determined that Plaintiff retained the MFC to understand, carry out, and remember simple instructions; respond appropriately to supervision, co-workers, and usual work situations;

and deal with changes in a routine work setting. (Tr. 20). The ALJ found that Plaintiff had the MFC to perform the minimum requirements of competitive, remunerative unskilled work. (Tr. 25-6).

**1. The ALJ's determination that Plaintiff could perform competitive, remunerative unskilled work is not supported by substantial evidence**

At the administrative hearing, Plaintiff testified that she left her job in the financial aid office of Ithaca College in January 2005, due to problems with her memory and difficulty remembering the necessary state and federal guidelines for financial aid. (Tr. 379). On February 22, 2005, Plaintiff saw her primary care physician Dr. Cynthia Terry complaining of loss of balance, memory loss, depression, fatigue, and generalized aching. (Tr. 197). Dr. Terry attributed Plaintiff's symptoms to her sleep apnea. Id. A head CT scan revealed questionable normal pressure hydrocephalus. (Tr. 146). Plaintiff saw neurologist Dr. Seshuaro Kruthiventi on March 15, 2005 complaining of recurrent falls, excessive sleeping, and memory problems. (Tr. 144). An MRI on April 4, 2005 revealed cerebral white matter signal and premature cerebral atrophy. (Tr. 150). Neurologist Dr. Richard Maxwell diagnosed Plaintiff with cognitive disorder, not otherwise specified. (Tr. 135). Dr. Anton Porsteinsson evaluated Plaintiff with atypical memory disorder with static encephalopathy of unknown origin. (Tr. 223, 291).

Treating neurologist Dr. Maxwell opined that Plaintiff "will have difficulty in any environment where there are changing

7

expectations. She will function best when she has a consistent routine in a familiar environment." (Tr. 136). He found that she has a "moderate to severe impairment in her ability to accept and carry out responsibility for directions, control, and planning." Dr. Maxwell assessed Plaintiff with a borderline full-scale IQ, a low average verbal IQ, and a borderline Performance IQ. (Tr. 124-136).

The ALJ assigned "considerable weight" to Dr. Maxwell's opinion but without explanation ignored portions of his opinion that would indicate that Plaintiff's MFC was further diminished. In his 2005 report, Dr. Maxwell stated that based on Plaintiff's complex set of cognitive weaknesses, she is "totally disabled." (Tr. 135). He reported that Plaintiff's memory capacity was stronger than her intellectual capacity, and her symptoms were consistent with normal pressure hydrocephalus. (Tr. 135) In his 2006 neuropsychological evaluation, Dr. Maxwell reported that Plaintiff had the same level of cognitive functioning and her condition did not appear to be progressive. (Tr. 305). He opined that the "deterioration of functional abilities may be largely associated with her mounting weight gain." Id. At this time, he performed a test for memory and malingering and determined that Plaintiff's test results were "an accurate representation of her current capacity." (Tr. 301). "A treating physician's statement that the claimant is disabled cannot itself be determinative." Snell v. Apfel, 177 F.3d 128, 133 (2d. Cir. 1999). See 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). However, the

ALJ's MFC assessment is inconsistent with some of Dr. Maxwell's findings.

An ALJ may not credit some of a doctor's findings while ignoring other significant deficits that the doctor identified. See Shaw v. Chater, 221 F.3d 126, 135 (2d Cir. 2000). If the ALJ's "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p. A claimant is entitled to an explanation of why the ALJ rejected a portion of a treating physician's opinion. Snell v. Apfel, 177 F.3d 128 (2d Cir. 1999). Here, the ALJ failed to explain why he ignored portions of an opinion for which he granted "significant weight." This selective adoption of only the least supportive portions of a medical source's statements is not permissible. See Dioguardi v. Commissioner of Social Security, 445 F.Supp.2d 288, 297 (W.D.N.Y. 2006).

SSR 85-15 provides that "a finding of disability can be appropriate for an individual who has a severe mental impairment which does not meet or equal the Listing of Impairments, even where he or she does not have adversities in age, education, or work experience." Thus, it is important for an ALJ to accurately assess and describe the extent of Plaintiff's MFC. Accordingly, I find that the case should be remanded in order for the ALJ to re-evaluate Plaintiff's MFC by considering the record in its entirety.

9

**III. The ALJ's finding that Plaintiff could engage in substantial gainful activity is not supported by the evidence in the medical record**

The ALJ assessed Plaintiff with the RFC to lift or carry 20 lbs. occasionally, 10 lbs. frequently, stand and/or walk 6 hours in an 8-hour day, and sit 6-hours in an 8 hour day. (Tr. 20). He found that she can understand, carry out, and remember simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting. The ALJ concluded that Plaintiff was unable to perform her past relevant work as an information services technician, assistant secretary, receptionist, and food processor. (Tr. 25).

The ALJ failed to include limitations based on Plaintiff's equilibrium problems. Dr. Maxwell opined that his neuropsychological evaluation was consistent with Plaintiff's reports of left side weakness (Tr. 133). On November 9, 2005, Dr. Porsteinsson noted that Plaintiff's gait "showed good stride and arm swing, with slight clumsiness on pivoting and mild sway of Romberg." Dr. Kruthiventi found "equilibrium problems with improving gait." The ALJ did not include these limitations in Plaintiff's RFC. (Tr. 177). Upon remand, the ALJ must determine the extent of Plaintiff's equilibrium problems and properly establish Plaintiff's physical limitations.

## A. The ALJ improperly applied the medical-vocational guidelines and SSR 85-15

Once a claimant has shown that he or she can no longer perform their past relevant work, the ALJ bears the burden of proving that the claimant can engage in other substantial gainful activity. 20 C.F.R. §§ 494.1520(g), 404.1560(c). See Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Carroll v. Secretary of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983). In the ordinary case, the ALJ satisfies this burden by considering the claimant's age, education, and work experience in conjunction with the applicable Medical-Vocational Guidelines ("Grid Rule"). 20 C.F.R. Pt. 404, Subpt. P, App. 2. In a case where both exertional and non-exertional limitations are present, the Grid Rules in Appendix 2 cannot provide the exclusive framework for making a disability determination. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200(e)(2). See Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986).

Here, the ALJ determined that Plaintiff, who was 50-years-old at the alleged onset date, was an individual approaching advanced age with at least a high school education and the ability to communicate in English. (Tr. 25). The ALJ noted that under Grid Rule 202.14, the transferability of Plaintiff's job skill was not material to the determination of disability. Id. See SR 82-41. The ALJ determined that Rule 202.14 would direct a finding of "not disabled" if Plaintiff were able to perform the full range of light work. (Tr. 25).

11

The ALJ relied upon Social Security Ruling 85-15 to determine that claimant retained the ability to perform unskilled work. (Tr. 25-6). Id. SSR 85-15 is intended to explain how the Grid Rules are applied when a claimant has solely non-exertional limitations.  However, the ruling does not apply to a case in which the claimant suffers from a combination of exertional and non-exertional impairments. Roberts v. Shalala, 66 F.3d 179, 183 (9th Cir. 1995). SSR 85-15 requires the ALJ to consider "how much the person's occupational base from sedentary work through heavy work is reduced by the effects of the non-exertional impairments." Here, Plaintiff was limited to light work, and the ALJ's reliance on SSR 85-15 was improper.

Dr. Maxwell assessed Plaintiff with a borderline full-scale IQ of 79, a low average verbal IQ of 88, and a borderline Performance IQ of 74. (Tr. 124-136). Borderline intellectual functioning is a significant non-exertional limitation. Lucy v. Chater, 113 F.3d 905, 908 (8th Cir. 1997). A borderline IQ has a significant impact on a claimant's employability. De Leon v. Sec. of Health and Human Servs., 734 F.2d 930, 936 (2d Cir. 1984)(Plaintiff's full scale IQ of 85, verbal score of 78, and performance score of 97 was relevant to his employability, "even as a mop-pusher, porter, or maintenance man"). Application of the Grid Rules is inappropriate when a claimant has borderline intellectual functioning. Gallivan v. Apfel, 88 F.Supp.2d 92, 98-9 (W.D.N.Y. 2000)(Plaintiff with a verbal IQ of 73, a performance IQ of 79, and a full-scale IQ of 75 was incorrectly found "not disabled" within the framework of the Grids).

I find that due to Plaintiff's combination of exertional and non-exertional limitations, reliance upon SSR 85-15 and Grid Rule 202.14 in the instant case constituted legal error. Thus, the ALJ's determination that Plaintiff's mental impairments had no effect on her occupational base was not supported by substantial evidence in the record.

**B. The ALJ should have consulted a vocational expert**

If a Grid Rule cannot be used, the testimony of a VE or other similar evidence is required in order to support a finding of RFC. Rosa v. Callahan, 168 F.3d 72 (2d. Cir. 1999). See also Jones v. Bowen, 841 F.2d 849, 851 (8th Cir. 1988). Here, the ALJ simply concluded that Plaintiff's non-exertional limitations had "little to no effect on the occupational base of unskilled light work". (Tr. 25). "If the Secretary chooses to proceed without expert testimony by taking administrative notice, the Secretary must provide a similar degree of specificity to achieve the underlying objectives of procedural fairness to the claimant and preservation of an adequate record for review." Decker v. Harris, 647 F.2d 291, 298 (2d Cir. 1981). Here, reliance on SSR 85-15 and the Grid Rules did not provide specific evidence that jobs were available in the national economy. "If non-exertional impairments significantly limit basic work activities, the ALJ should not rely solely on the Grids and should take evidence from a vocational expert." Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990). See also Fenton v. Apfel, 149 F.3d 907, 910 (8th Cir. 1998). Upon remand, the ALJ should consult a vocational expert to determine whether Plaintiff can perform any job that exists in significant numbers.

I find that the decision of the Commissioner should be reversed and remanded for a new hearing for the reasons stated in this decision. In particular, the ALJ must establish the impact of Plaintiff's mental and physical impairments on her RFC and obtain a VE's testimony to demonstrate whether Plaintiff can perform any job that exists in significant numbers.

## Conclusion

For the reasons set forth above, I find that the Commissioner's decision that Plaintiff is not disabled was based on errors of law. This case is remanded to the Commissioner for further proceedings in accordance with this decision.

**ALL OF THE ABOVE IS SO ORDERED.**

                                           s/Michael A. Telesca
                                             MICHAEL A. TELESCA
                                    United States District Judge

DATED: July 27, 2010
       Rochester, New York